UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
GOVERNMENT EMPLOYEES INSURANCE  :
COMPANY, GEICO INDEMNITY         :
COMPANY, GEICO GENERAL INSURANCE :
COMPANY, and GEICO CASUALTY      :
COMPANY,                         :            REPORT AND
                                 :            RECOMMENDATION
            Plaintiffs,          :
                                 :            23-CV-03536 (OEM) (PK)
    -against-                    :
                                 :
MC PHYSICAL THERAPY, P.C., MICHELLE :
NESAS CUARDA, P.T., RAINE M. PESIDAS :
PHYSICAL THERAPY, P.C., RAINE MARIE :
MENDIOLOA PESIDAS, P.T., GO FLEX :
REHAB PHYSICAL THERAPY, P.C., LYN :
JOHNSON BALLENER, P.T., JA PHYSICAL :
THERAPY, P.C., JEVA PHYSICAL THERAPY, :
P.C., JOSEPH EDWIN VILLACORTE    :
ABRENICA, P.T., BETTER HANDS     :
PHYSICAL THERAPY, P.C., KRISTINE MAY :
PARCON, P.T., and JOHN DOE       :
DEFENDANTS 1 – 10,               :
                                 :
            Defendants.          :
------------------------------------------------------------ x

**Peggy Kuo, United States Magistrate Judge:**

Government Employees Insurance Company, GEICO Indemnity Company, GEICO General Insurance Company, and GEICO Casualty Company (collectively, "GEICO" or "Plaintiffs") brought this action seeking to recover over $3 million for allegedly fraudulent no-fault insurance claims billed by Defendants to GEICO for services provided to victims of automobile accidents. (*See* Compl., Dkt. 1.)  The Complaint alleges fifteen causes of action against multiple Defendants[1] for

---

[1] Defendants MC Physical Therapy, P.C., Michelle Nesas Cuarda, P.T., Raine M. Pesidas Physical Therapy, P.C., Raine Marie Mendioloa Pesidas, P.T., Better Hands Physical Therapy, P.C., and Kristine May Parcon, P.T. were dismissed from the case pursuant to a stipulation of dismissal on December 21, 2023.

1

declaratory judgment, common law fraud, unjust enrichment, and civil RICO and civil RICO conspiracy to commit fraud.

Pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, GEICO has moved for default judgment against Defendants Go Flex Rehab Physical Therapy, P.C. ("Go Flex"), JA Physical Therapy, P.C. ("JA"), Jeva Physical Therapy, P.C. ("Jeva") (together, the "Corporate Defaulting Defendants"), Lyn Johnson Ballener, P.T. ("Ballener"), and Joseph Edwin Vallacorte Abrenica, P.T. ("Abrenica") (together with Ballener, the "Individual Defaulting Defendants") (the Individual Defaulting Defendants, together with the Corporate Defaulting Defendants, are referred to as the "Defaulting Defendants"). ("Motion," Dkt. 61.) The Honorable Orelia E. Merchant referred the Motion to me for a report and recommendation. For the reasons stated herein, I respectfully recommend that the Motion be granted.

## BACKGROUND

### I. New York's No-Fault Law

New York's Comprehensive Automobile Insurance Reparations Act, N.Y. Ins. Law §§ 5101 *et seq.* (the "No-Fault law"), requires no-fault insurers, such as GEICO, to reimburse patients for up to $50,000 in personal injury benefits without proof of fault of the other driver. N.Y. Ins. Law §§ 5102, 5103. Insured patients may assign claims for benefits to their healthcare provider to directly submit requests for payment to the insurance company. 11 N.Y.C.R.R. § 65-3.11(a). To qualify for reimbursement payments under the No-Fault law, a healthcare provider must comply with all applicable licensing requirements for performing covered services. *Id.* § 65-3.16(a)(12). New York law prohibits, *inter alia*, the ownership or control of a medical practice by unlicensed individuals and the payment or solicitation of kickbacks in exchange for patient referrals. *See Gov't Emps. Ins. Co. v. Elmwood Park Med. Grp., P.C.*, No. 21-CV-617 (FB)(RER), 2022 WL 772737, at *2 (E.D.N.Y. Feb. 23, 2022), *R&R adopted*, 2022 WL 768360 (E.D.N.Y. Mar. 14, 2022) (citing N.Y. Educ. Law §§ 6509-a,

2

6512, 6530(11), 6530(18), 6530(19), 6531); *Gov't Emps. Ins. Co. v. Parkway Med. Care, P.C.*, No. 15-CV-3670 (FB)(VMS), 2017 WL 1133282, at *2 (E.D.N.Y. Feb. 21, 2017), *R&R adopted*, 2017 WL 1131901 (E.D.N.Y. Mar. 24, 2017).

## II. Factual Background

The following facts are taken from the Complaint ("Compl.," Dkt. 1), Plaintiffs' Memorandum in Support of Motion for Default Judgment ("Pl. Mem.," Dkt. 61-1), and the Declarations of Steven Henesy ("Henesy Decl.," Dkt. 61-2) and Kathleen Asmus ("Asmus Decl.," Dkt. 61-5) and are accepted as true for purposes of the Motion. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (in light of a defendant's default, a court is required to accept all of plaintiff's factual allegations as true and draw all reasonable inferences in its favor).

### A. The Defaulting Defendants

Ballener and Abrenica are licensed physical therapists. Go Flex, JA, and Jeva are New York professional corporations offering physical therapy services. Ballener served as the nominal owner of Go Flex, and Abrenica served as the nominal owner of JA and Jeva. (Compl. ¶¶ 4, 17-19.) In actuality, Go Flex, JA, and Jeva were secretly owned and controlled by various John Doe Defendants, unlicensed and non-physician individuals who used those entities as vehicles to fraudulently bill GEICO for fraudulent services. (Compl. ¶¶ 5, 27.)

### B. The Fraudulent Scheme

The Defaulting Defendants submitted thousands of fraudulent no-fault insurance claims to GEICO relating to "medically unnecessary, illusory, and otherwise unreimbursable healthcare services," allegedly provided to automobile accident victims in New York. (Compl. ¶ 1.) The fraudulent services included activity limitation measurement tests ("ALM Tests") and computerized range of motion and muscle strength testing services ("ROM/MT"). (*Id.*)

3

Ballener and Abrenica also agreed, in exchange for compensation from the John Doe Defendants, to falsely represent in filings with New York State that they owned and controlled the Corporate Defaulting Defendants, when in fact Ballener and Abrenica knew that the John Doe Defendants had true ownership and control over the Corporate Defaulting Defendants and would use those entities to submit fraudulent billing to insurers, including GEICO. (*Id.* ¶¶ 54-55.) The Individual Defaulting Defendants had no genuine physician-patient relationship with patients and relied on the John Doe Defendants for access to patients. (*Id.* ¶¶ 58-59, 68.)

Between June and August 2019, Abrenica permitted the John Doe Defendants to use JA as a vehicle to submit fraudulent billing to GEICO and other insurers; during that time, the John Doe Defendants used JA to submit hundreds of thousands of dollars in fraudulent billing to GEICO. (*Id.* ¶ 78.)

In August 2019, in coordination with the John Doe Defendants, Abrenica caused Jeva to be incorporated. (*Id.* ¶ 79.) Between May and July 2020, the John Doe Defendants used Jeva to submit hundreds of thousands of dollars in fraudulent billing to GEICO. (*Id.* ¶ 80.) The John Doe Defendants arranged for JA and Jeva to enter into "billing," "marketing," "transportation," and other financial agreements, which called for exorbitant payments regardless of the actual value of services provided, and issued kickbacks to unlicensed laypersons for patient referrals via JA and Jeva. (*Id.* ¶ 81-92.)

Between February and April 2020, Ballener agreed with the John Doe Defendants to enter into a nearly identical scheme using Go Flex, which the John Doe Defendants used as a vehicle to submit hundreds of thousands of dollars in fraudulent billing to GEICO. (*Id.* ¶ 140-54.)

The fraudulent claims submitted to GEICO contained the following misrepresentations and omissions: (i) that the Corporate Defaulting Defendants were properly licensed and therefore, eligible to receive no-fault benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. §

4

65-3.16(a)(12), when in fact they were operated by unlicensed laypersons; (ii) that the Corporate Defaulting Defendants were properly licensed and, therefore, eligible to receive no-fault benefits, when in fact they were not properly licensed in that they obtained patients through an illegal kickback scheme; (iii) that billed-for services were medically necessary, when in fact they were not, and were performed and billed pursuant to a pre-determined, fraudulent protocol designed solely to enrich the Defendants; (iv) that billed-for services were properly billed for, when in fact the billing codes misrepresented and exaggerated the level and type of services that purportedly were provided in order to inflate the charges submitted to GEICO; and (v) that the billed-for services were performed by the Individual Defaulting Defendants, when in fact they were performed, if at all, by independent contractors. (Pl. Mem. at 8-9).

### III. Procedural Background

GEICO filed the Complaint on May 10, 2023. (Dkt. 1.) After none of the Defaulting Defendants answered or appeared, GEICO requested and the Clerk of the Court entered Certificates of Default against them. (Dkts. 27-31, 33-37.) GEICO filed the Motion on February 21, 2024. (Dkt. 61.)

On February 25, 2024, Defendant Ballener appeared through counsel, and on March 15, 2024, filed an opposition to the Motion, seeking to vacate the default against her in order to argue that she should not be held jointly and severally liable with GoFlex for the full amount of reimbursements paid by Plaintiffs. ("Response," Dkt. 67 (filed under seal); redacted version filed at Dkt. 68.) GEICO filed a reply brief, opposing Ballener's request. ("Reply," Dkt. 69 (filed under seal); redacted version filed at Dkt. 70.)

## DISCUSSION

In the Motion, GEICO requests that the Court: (1) declare, pursuant to 28 U.S.C. §§ 2201 and 2202, that GEICO is not obligated to pay the Defaulting Defendants any of the pending bills for

5

outstanding claims submitted to GEICO (First Cause of Action); (2) enter default judgments on the common law fraud claims against the Defaulting Defendants (the Sixth, Seventh, and Eighth Causes of Action); and (3) award compensatory damages for which Defaulting Defendants should be held jointly and severally liable. GEICO does not seek default judgments against the Defaulting Defendants with respect to the claims for civil RICO, civil RICO conspiracy, or unjust enrichment. (Pl. Mem. at 1 n.1.)

## I. Default Judgment Standard

Rule 55 of the Federal Rules of Civil Procedure prescribes a two-step process for entry of a default judgment. First, when a defendant "has failed to plead or otherwise defend," the Clerk of Court enters the defendant's default. Fed. R. Civ. P. 55(a). The plaintiff may then move the court for an entry of default judgment. Fed. R. Civ. P. 55(b)(2). "[J]ust because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." *GuideOne Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc.*, 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010). The plaintiff must demonstrate proper service of the summons and complaint. *See Advanced Capital Commercial Group, Inc. v. Suarez*, No. 09-CV-5558 (DRH)(GRB), 2013 WL 5329254, at *2 (E.D.N.Y. Sept. 20, 2013). The plaintiff must also establish compliance with the procedural requirements of Local Civil Rules 7.1 and 55.2.

The court must determine whether Plaintiffs' "allegations establish [the defendant's] liability as a matter of law." *Finkel*, 577 F.3d at 84. "[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). In considering a motion for default judgment, a court accepts a plaintiff's "factual allegations as true and draw[s] all reasonable inferences in [the plaintiff's] favor." *Finkel*, 577 F.3d at 84. However, a default is "not considered an admission of damages." *Greyhound*, 973 F.2d at 158. "The plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence or detailed affidavits." *Joe Hand Promotions, Inc. v. Benitez*,

No. 18-CV-6476 (ARR)(PK), 2020 WL 5519200, at *3 (E.D.N.Y. Aug. 27, 2020), *R&R adopted*, 2020 WL 5517240 (E.D.N.Y. Sept. 14, 2020).

A court "possesses significant discretion" in granting a motion for default judgment, "including [determining] whether the grounds for default are clearly established…" *Klideris v. Trattoria El Greco*, No. 10-CV-4288 (JBW)(CLP), 2011 WL 7114003, at *2 (E.D.N.Y. Sept. 23, 2011), *R&R adopted*, 2012 WL 273078 (E.D.N.Y. Jan. 30, 2012).

**II.   Jurisdiction**

   *A.  Subject Matter Jurisdiction*

Plaintiffs are Nebraska corporations with their principal place of business in Maryland, and all Defaulting Defendants are citizens of New York. (Compl. ¶¶ 12, 17-19, 23-24.) The matter in controversy exceeds $75,000. (*Id.* ¶ 1.) The Court accordingly has diversity jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1332(a) and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367.

   *B.  Personal Jurisdiction and Service on Defendants*

"[S]erving a summons . . . establishes personal jurisdiction over a defendant . . . who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) (quoting Fed. R. Civ. P. 4(k)(1)(A).) New York State has general jurisdiction over its residents. *See Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 622 n.1 (2d Cir. 2016). A corporate defendant may be treated as "essentially at home" for personal jurisdiction purposes where it is incorporated or maintains its principal place of business. *See id.*, 814 F.3d at 627.

All Individual Defaulting Defendants are residents of New York and all Corporate Defaulting Defendants are New York corporations with their principal places of business in Brooklyn. (Compl. ¶¶ 17-19, 23-24.) Plaintiffs properly served the Summons and Complaint on each of the Individual

7

Defaulting Defendants by executing service upon them personally, (Dkts. 10, 15), and each of the Corporate Defaulting Defendants by delivering the Summons and Complaint to the managing agent of each Corporate Defaulting Defendant. (Dkts. 10-12, 15-16.); *see* Fed. R. Civ. P. 4(e), (h); N.Y.C.P.L.R. § 308(2), § 311(a)(1). The Court's personal jurisdiction over the Defaulting Defendants is, therefore, established.

### III.  Procedural Compliance with Local Civil Rules 7.1 and 55.2

GEICO filed the following in support of the Motion as required by the Local Civil Rules: Notice of Motion (Dkt. 61); a memorandum of law in support of the Motion (Dkt. 61-1); a proposed default judgment order (Dkt. 61-8); and proof of mailing the Motion papers to Defaulting Defendants. (Dkt. 62.) GEICO has also affirmed that the Individual Defaulting Defendants are not infants, in the military, or incompetent persons. (Dkts. 61-3, 61-4.) Thus, compliance with the Local Civil Rules is satisfied.

### IV.  Ballener's Request to Vacate Default

I construe Ballener's response to the Motion to constitute a motion to vacate her default. She seeks to vacate the default in order to contest the amount of damages Plaintiffs seek against her. (Response at 4.)

Rule 55 of the Federal Rules of Civil Procedure provides that an entry of default may be set aside for "good cause." Fed. R. Civ. P. 55(c). The Second Circuit has "established three criteria that must be assessed in order to decide whether to relieve a party from default or from a default judgment: (1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; (3) whether a meritorious defense is presented." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993); *see also Bricklayers & Allied Craftworkers Local 2 Pension Fund ex rel. O'Sick v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 186 (2d Cir. 2015).

Ballener asserts that her default was not willful because she was frightened and confused about another matter pending against her, and when she learned that default had been entered, she retained counsel to appear in this case. She argues that in order for her default to be willful, her conduct would have to be "deliberate or egregious," and the fact that she has now appeared shows that it was not. (Response at 3-4.) Ballener also contends that, because she only plans to contest the *amount* of the damages GEICO seeks against her, Plaintiffs will not be prejudiced by vacating her default. (*Id.* at 4.) In addition, she argues that entry of a default judgment against her would lead to a harsh and unfair result, and that she did not default in bad faith. (*Id.* at 6.) She claims that she has a "meritorious defense" with regard to the amount of damages against her.

I find that Ballener's default was willful. A defendant's default may be assumed to be willful when that defendant has knowledge of a pending case, but fails to act. *See, e.g.*, *Vazquez v. Hand Hosp. LLC*, No. 20-CV-5328 (ER), 2022 WL 17718337, at *5 (S.D.N.Y. Dec. 15, 2022) (denying a motion to vacate where "[d]efaulting [d]efendants elected to avoid defending their case despite their knowledge of the case and its progress."). Bad faith is not required. *Gucci Am., Inc. v. Gold Ctr. Jewelry*, 158 F.3d 631, 635 (2d Cir. 1998) ("[W]hile a determination that the defendant acted in bad faith would certainly support a finding of 'willfulness,' it is sufficient that the defendant defaulted deliberately."). Ballener does not contest that she was properly served with the Complaint, and thus on notice of this case from its inception. She also concedes that she did not respond to the Complaint for approximately nine months, from May 2023 until February 2024, when her counsel entered an appearance on her behalf and requested additional time to respond to the Motion. (Reply at 1-2.)

Moreover, Ballener does not claim that her default was inadvertent. *Cf. Global Gold Mining, LLC v. Ayvazian*, 983 F. Supp. 2d 378, 387 (S.D.N.Y. 2013) ("[A] showing that a default was inadvertent is sufficient . . . to vacate a default judgment."), *aff'd in part and modified in part*, 612 F. App'x 11 (2d Cir. 2015). She does not assert that she was negligent or careless. *See Bricklayers*, 779 F.3d

9

at 186 ("'[W]illfulness,' in the context of a default, . . . refer[s] to conduct that is more than merely negligent or careless, but is instead egregious and . . . not satisfactorily explained") (citations omitted).

The only explanation Ballener gives for her inaction is that she was afraid and confused. However, fear is not sufficient to negate willfulness, particularly since she has not described any change in circumstances that allows her now to act without fear. *See, e.g.*, *Mountains of Spices LLC v. Lafrenz*, No. CV-21-01497 (PHX)(JAT), 2024 WL 3553114, at *4 (D. Ariz. July 26, 2024) (noting, where defendant cited fear of plaintiff as reason for not appearing, that "nothing [h]as changed since the beginning of this case to embolden [the defendant] to no longer be afraid."). Furthermore, Ballener had access to counsel who was representing her in another matter and, therefore, she could have sought advice to address any confusion she may have had about her obligations in this case. *Jaramillo v. Banana King Rest. Corp.*, No. 12-CV-5649 (NGG)(RML), 2016 WL 1084729, at *4 (E.D.N.Y. Feb. 26, 2016), *R&R adopted*, 2016 WL 1108956 (E.D.N.Y. Mar. 18, 2016), *aff'd sub nom. Jaramillo v. Vega*, 675 F. App'x 76 (2d Cir. 2017) (denying motion to vacate of defendant who claimed to have defaulted because he did not sufficiently understand English or the American legal system, stating that "forwarding the documents to his company's attorney would simply have been a matter of common sense, and [the plaintiff had] no reasonable excuse for failing to do so").

Thus, Ballener's decision not to respond to the Complaint until after the Motion was filed approximately nine months later constitutes the kind of "deliberate or egregious conduct" that would justify finding her in default.[2]  *See, e.g., Sream Inc.*, 2017 WL 2633510, at *2 (defendant who was "grossly negligent" in failing to answer was not necessarily willful, but needs to have "engaged in deliberate or egregious conduct.")

---

[2] GEICO also notes that Go Flex, the company Ballener purportedly controlled, continued to attempt to collect on individual collection arbitrations against GEICO throughout this time. (Reply at 5.)

10

"Where a party's default was willful, this factor alone is sufficient to deny a motion to vacate." *Jaramillo v. Banana King Rest. Corp.*, No. 12-CV-5649 (NGG)(RML), 2016 WL 1084729, at *4 (E.D.N.Y. Feb. 26, 2016), *R&R adopted*, 2016 WL 1108956 (E.D.N.Y. Mar. 18, 2016), *aff'd sub nom. Jaramillo v. Vega*, 675 F. App'x 76 (2d Cir. 2017). Nonetheless, I also consider the other factors. Ballener concedes liability (Response at 2), so she does not have a meritorious defense to the claims against her. Rather, her so-called meritorious defense is merely an argument for a lesser award of damages against her. Because the Court must separately assess damages even after finding liability in a default judgment context, *see Greyhound Exhibitgroup*, 973 F.2d at 158, vacating the default against Ballener is not necessary in order to consider her arguments for reducing the damages award against her. Thus, although I do not find that vacating the default would cause prejudice to Plaintiffs, I find that in light of Ballener's willful default, her default should not be vacated.

Accordingly, I respectfully recommend that Ballener's motion to vacate default be denied.

**V.    Liability**

*A. Common Law Fraud Claims*

GEICO seeks default judgment on its common law fraud claims against each of the Defaulting Defendants. "To state a claim for fraud under New York law, a plaintiff must allege (1) a material misrepresentation or omission of fact; (2) which the defendant knew to be false; (3) which the defendant made with the intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Parkway*, 2017 WL 1133282, at *7 (citing *Fin. Guar. Ins. Co. v. Putnam Advisory Co.*, 783 F.3d 395, 402 (2d Cir. 2015)).

GEICO has alleged that the Defaulting Defendants intentionally and knowingly participated in submitting fraudulent claims to GEICO for the fraudulent services. (Compl. ¶¶ 304-05, 311-12, 318-19.) The Complaint alleges that, in their claims to GEICO for the fraudulent services, the Defaulting Defendants intentionally and knowingly misrepresented that the Corporate Defaulting

11

Defendants were properly licensed even though they were operated by unlicensed laypersons and obtained patients through an illegal kickback scheme. (*Id.* ¶¶ 140-77.) The Complaint also alleges that the Defaulting Defendants intentionally and knowingly misrepresented that the billed-for services were medically necessary and that their medical practices were properly licensed and eligible to receive no-fault benefits. (*Id.* ¶¶ 178-207.) GEICO alleges that the Defaulting Defendants intentionally and knowingly submitted the fraudulent claims and provided the fraudulent services with the goal of financially enriching the Defendants rather than because they were medically necessary (*id.*), that the Defaulting Defendants intentionally and knowingly inflated the charges submitted to GEICO (*id.* ¶¶ 181-207), and that the Defaulting Defendants intentionally and knowingly falsely represented that the Individual Defaulting Defendants performed the billed-for services when, in fact, they were either not performed or performed by independent contractors. (*Id.* ¶¶ 231-50.)

GEICO alleges that it reasonably relied on the fraudulent billing submitted by the Defaulting Defendants because it was obligated by law to pay any facially valid claims within 30 days (Compl. ¶ 264) and could not have reasonably discovered the scheme due to its financial complexity and affirmative steps taken by the Defendants to conceal the scheme. (*Id.* ¶¶ 264-65.) Finally, GEICO has been injured because it paid $1,643,395.68 in claim reimbursements to the Defaulting Defendants, which the Defaulting Defendants are not entitled to. ("Henesy Decl.," Dkt. 61-2 at ¶ 19.)

Accordingly, I respectfully recommend finding that GEICO's allegations are sufficient to establish common law fraud. (*See* Pl. Mem. at 4, 7, 9-12 (collecting similar cases)); *see also Gov't Emps. Ins. Co. v. Binns*, No. 22-CV-1553 (NGG) (PK), 2024 WL 1433278, at *5 (E.D.N.Y. Apr. 3, 2024) (reaching a similar conclusion); *Parkway*, 2017 WL 1133282, at *7 (collecting cases).

### B. *Declaratory Judgment*

The Motion seeks entry of a declaratory judgment, pursuant to 28 U.S.C. §§ 2201 and 2202, that declares that GEICO has no obligation to make, and the Defaulting Defendants have no right to

12

receive, payment for any claims submitted to GEICO that are still pending, because of fraudulent representations made in those claims.

A court may exercise its discretion to issue a declaratory judgment in cases where the party seeking the declaratory judgment can demonstrate the existence of an actual case or controversy. "Declaratory relief is appropriate (i) where the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, or (ii) when it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceedings." *Parkway*, 2017 WL 1133282, at *9. "Courts within this district have, on numerous occasions, found these requirements met in actions by insurers seeking declaratory judgments regarding obligations relating to allegedly fraudulent claims." *Id.*

GEICO has established that an actual controversy exists and that a declaratory judgment would afford specific and conclusive relief with regard to claims submitted by the Defaulting Defendants which are still pending payment. GEICO has compiled payment searches using a tax identification number setting forth the amount of payments that GEICO made based on claims submitted via the Defaulting Corporate Defendants (the Tax Identification Number Runs, or "TIN Runs"). It has also compiled claim information setting forth the number and amount of claims by the Defaulting Corporate Defendants submitted to GEICO that GEICO has not paid and are not the subject of arbitration or lawsuits, as well as amounts sought from GEICO at arbitration or via lawsuits by the Defaulting Corporate Defendants. ("Asmus Decl.," Dkt. 61-5.) These compilations indicate that the total amount of outstanding claims in dispute is at least $12,902.34 in unpaid claims that are not the subject of arbitration or lawsuits, at least $4,264.27 sought by JA via litigation or arbitration, and at least $385.62 sought by Go Flex via litigation or arbitration. (Pl. Memo. at 5-8; Asmus Decl. ¶¶ 10-16; Exs. 7, 8 to Asmus Decl.)

GEICO has adequately alleged that these pending claims are fraudulent for the reasons discussed above. Therefore, GEICO has established that there is an actual controversy for which a

13

declaratory judgment would afford specific relief. (*See* Pl. Mem. at 7 (collecting cases)).

Accordingly, I respectfully recommend that the Court enter a declaratory judgment that GEICO is not obligated to pay any outstanding claims submitted by the Defaulting Defendants.

**VI.     Damages**

Allegations related to damages are not deemed admitted upon entry of a default. *Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ. & Training Fund & Other Funds v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012). "The plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence or detailed affidavits." *Joe Hand*, 2020 WL 5519200, at *3.

### A. *Common Law Damages*

GEICO seeks reimbursement of the amounts that it has paid to Defaulting Defendants in connection with the fraudulent claims submitted by them. The TIN Runs submitted by GEICO show each payment GEICO made to each Defaulting Corporate Defendant. (Exs. 1-3 to Asmus Decl.) The TIN Runs indicate that GEICO paid a total of $1,643,395.68 to the Defaulting Corporate Defendants as follows:

| Defaulting Defendant | Total Claims Paid by GEICO |
|---|---|
| Go Flex | $615,938.11 |
| Jeva | $485,331.77 |
| JA | $542,125.80 |
| **Total** | **$1,643,395.68** |

Accordingly, I respectfully recommend that GEICO be awarded $1,643,395.68 in damages based on their common law fraud claims against Defaulting Defendants.

### B. *Joint and Several Liability*

GEICO requests that Ballener and Abrenica be held jointly and severally liable with the Corporate Defaulting Defendant(s) they nominally owned, *i.e.*, that Ballener be held jointly and severally liable with Go Flex, and that Abrenica be held jointly and severally liable with JA and Jeva.

14

GEICO states that the injury GEICO suffered as a result of the scheme perpetrated by each Corporate Defaulting Defendant is indivisible from their respective Individual Defaulting Defendants and was caused by the coordinated activity of each pair. (Pl. Memo. at 12); *see, e.g.*, *Gov't Emps. Ins. Co. v. Parkway Med. Care, P.C.*, No. 15-CV-3670 (FB)(VMS), 2017 WL 1133282, at *15 (E.D.N.Y. Feb. 21, 2017), *R&R adopted*, No. 15-CV-3670 (FB)(VMS), 2017 WL 1131901 (E.D.N.Y. Mar. 24, 2017) ("New York law provides for joint and several liability where defendants acted jointly or concurrently to produce a single injury. Joint and several liability may also be imposed where a plaintiff demonstrates that the harm it suffered as a result of the conduct of two or more defendants is 'indivisible.'") (citations removed)).

Courts have routinely found joint and several liability under similar circumstances and have followed GEICO's proposed method of awarding joint and several liability in cases such as this, including against nominal owners such as the Individual Defaulting Defendants. *See, e.g.*, *id.* (awarding joint and several liability in similar insurance fraud case against medical professional corporations and their nominal owners, while noting that parties can only be held jointly and severally liable for claims they were sufficiently alleged to have participated in); *Gov't Emps. Ins. Co. v. Elmwood Park Med. Grp., P.C.*, No. 21-CV-617 (FB)(RER), 2022 WL 772737, at *10 (E.D.N.Y. Feb. 23, 2022), *R&R adopted*, 2022 WL 768360 (E.D.N.Y. Mar. 14, 2022) (holding the same in a nearly identical scheme); *Gov't Emps. Ins. Co. v. Erlikh*, No. 16-CV-7120 (DLI)(SJB), 2019 WL 1487576, at *8 (E.D.N.Y. Feb. 28, 2019) (in a similar scheme, holding an individual defendant liable alongside the corporate defendant he had incorporated where "responsibility for the documents containing the fraudulent statements . . . cannot be allocated between the [defaulting defendants]")

Ballener acknowledges that she contributed to causing an indivisible injury (Response at 5) but contends that it would violate "traditional notions of fairness and justice" to hold her jointly and severally liable with Go Flex when she only received 10% of the funds and served as nothing more

15

than what GEICO itself describes as a "*de facto* employee" of the masterminds behind the scheme to defraud GEICO. (Response at 4-5.)

The relative amount of personal benefit received by a party in connection with a fraudulent scheme is of no consequence in considering whether to hold them jointly and severally liable. *See, e.g.*, *Wells Fargo Bank, N.A. v. Nat'l Gasoline, Inc.*, 577 F. App'x 58, 60 (2d Cir. 2014) (rejecting defendant's argument that she received "only" $9,000.00 out of millions in converted funds, stating that "[u]nder New York law, joint and several liability is a question of law that is not related to the factual apportionment of fault among defendants").

Accordingly, I respectfully recommend that Ballener and Go Flex be held jointly and severally liable for damages arising under GEICO's Sixth Cause of Action, that Abrenica and JA be held jointly and severally liable for damages arising under GEICO's Seventh Cause of Action, and that Abrenica and Jeva be held jointly and severally liable for damages arising under GEICO's Eighth Cause of Action.

### C. *Prejudgment Interest*

GEICO has not requested prejudgment interest. Under New York law, however, an award of pre-judgment interest on damages awarded for fraud is mandatory. *See* N.Y.C.P.L.R. § 5001; *Manufacturers Hanover Tr. Co. v. Drysdale Sec. Corp.*, 801 F.2d 13, 28 (2d Cir. 1986); *Parkway*, 2017 WL 1133282, at *17.

Prejudgment interest in New York accrues at the statutory rate of nine percent per year. N.Y.C.P.L.R. § 5004. "Where…damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." *Id.* § 5001(b). Courts have "wide discretion in determining a reasonable date from which to award pre-judgment interest." *Conway v. Icahn & Co.*, 16 F.3d 504, 512 (2d Cir. 1994). The methodology of calculating prejudgment interest at an annual rate of 9% beginning from January 1 of

16

the year following the year during which the injured party paid out the fraudulent claims has been followed in this district in other no-fault insurance fraud cases awarding damages on default judgment. *See, e.g.*, *Parkway*, 2017 WL 1133282, at *18.

JA submitted all fraudulent claims between June 2019 and August 2019. (Compl. at ¶ 78.) Jeva submitted all fraudulent claims between May 2020 and July 2020. (*Id.* at ¶ 80.) Go Flex submitted all fraudulent claims between February 2020 and April 2020. (*Id.* at ¶ 141.) Though GEICO does not specifically state when GEICO paid out each claim, I find that using January 1 following the year in which the claims were submitted as the start date for awarding prejudgment interest on those damages is a reasonable approach. The applicable interest rates for each Defaulting Defendant are accordingly set forth in the following table:

| Defaulting Defendant | Total Claims Paid by GEICO | Year Claims Were Submitted | Start Date for Calculating Pre-Judgment Interest | Daily Interest Rate |
|---|---|---|---|---|
| JA | $542,125.80 | 2019 | January 1, 2020 | $133.67 |
| Go Flex | $615,938.11 | 2020 | January 1, 2021 | $151.88 |
| Jeva | $485,331.77 | 2020 | January 1, 2021 | $119.67 |

Accordingly, I respectfully recommend that GEICO be awarded prejudgment interest at the daily rates set forth above from the respective start dates until judgment is entered.

## **CONCLUSION**

Based on the foregoing, I respectfully recommend that the Motion be granted, that a declaratory judgment be entered against Defaulting Defendants declaring that GEICO is not obligated to pay any outstanding claims that have been submitted by the Defaulting Defendants, and that damages and prejudgment interest be awarded to GEICO as follows:

- Jointly and severally against Defendants Ballener and Go Flex in the amount of $615,938.11 in damages, plus $151.88 in daily interest from January 1, 2020 through the date judgment is entered;

- Jointly and severally against Defendants Abrenica and JA in the amount of $542,125.80 in damages, plus $133.67 in daily interest from January 1, 2021 through the date judgment is entered; and

- Jointly and severally against Defendants Abrenica and Jeva in the amount of $485,331.77 in damages, plus $119.67 in daily interest from January 1, 2021 through the date judgment is entered.

Any written objections to this Report and Recommendation must be filed within 14 days of service of this report. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file objections within the specified time waives the right to appeal any order or judgment entered based on this Report and Recommendation. *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008).

*Peggy Kuo*
PEGGY KUO
United States Magistrate Judge

Dated: Brooklyn, New York
September 12, 2024

18